BRADSHAW et al. v. YAGER et al.

Court of Appeals of Kentucky.

Dec. 11, 1953.

As Modified on Denial of Rehearing March 26, 1954.

Woodward, Hobson & Fulton, Louisville, for appellants.

Smith, Reed & Leary, Frankfort, for appellees.

COMBS, Justice.

This action was commenced by a group of property owners in the City of Leitchfield to prevent the City from levying an assessment against their property to pay for street improvements.

The plaintiffs, property owners, contend that the City has proceeded without statutory authority in that the program was initiated before the Act on which the City relies became effective; that the work was incomplete and defective when the assessment was made; and that the property owners were not given notice and opportunity to protest the acceptance of the work. Complaint is also made about the amount of the judgment and computation of interest.

The regular judge granted a temporary injunction restraining the City from making further collections on the assessment and from paying the contractors. On final submission a special judge, Honorable Nolan Carter, dissolved the injunction, ordered the City to proceed with collection

of the assessment, and to discharge its obligation to the contractors, appellees here. At the request of the property owners the writer of this opinion directed the issuance of an injuncion retaining the status quo pending determination of this appeal.

The Leitchfield city council, on March 6, 1950, passed a resolution directing that a competent engineer be hired to make a survey for street improvements. The council, on March 15, 1950, adopted a second resolution authorizing the mayor to execute a contract with the Howard K. Bell Engineering Company. The resolution contained this proviso: "Provided the bill now pending before the legislature pertaining to the building of streets in cities of our class is finally passed and approved."

Through an emergency provision the Act referred to in the resolution became effective on March 25, 1950. KRS, chapter 94. By its terms it does not apply to improvements "initiated" prior to that date. KRS 94.294(2). After the effective date of the Act, the City, on April 10, 1950, passed another resolution designating the streets to be improved and declaring the improvement to be a necessity.

The City, on May 22, 1950, enacted an ordinance which provided that the streets named therein, being the same streets previously designated by the resolution of April 10, should be improved at the expense of abutting property owners. An invitation was published for competitive bids pursuant to the ordinance. Yager and Ragland, being the only bidders, were awarded the contract.

On or about November 1, 1950, the City's engineer was notified by the contractors that the work was complete. Notice of inspection was published in the Leitchfield Gazette on December 21, 1950. It was stated in the notice that the work would be inspected on December 28, 1950, and that "protest against acceptance of the work or the estimated cost thereof may be submitted in writing." The streets were inspected pursuant to the notice.

The City's engineer stated in his report that the inspection revealed certain "defective and correctable items" listed in the report. The engineer recommended that the work be approved conditionally pending correction of the defective items when weather conditions would permit; also that 10% of the contract price be withheld until the work was completed.

On January 15, 1951, R. E. Lowrey and W. L. Thomas, two of the plaintiffs in this action, appeared before the city council as representatives of a committee of citizens and protested the approval and acceptance of the streets. The council ignored the protest and on the same date enacted an ordinance accepting the streets subject to correction of the defective items listed in the engineer's report. On January 25, the council, by ordinance, apportioned the total cost of the work when completed and ordered the property owners to pay their proportionate shares. Some $16,632 was collected pursuant to this ordinance when further collection was enjoined.

In the spring of 1951, when weather conditions permitted, the contractors returned to Leitchfield and attempted to correct the defects mentioned in the engineer's report. The work was then finally approved by the City's engineer, subject to certain adjustments for defects not corrected. The engineer recommended that $2,685.48 be deducted from the contract price but that the contractors be given a credit against the deduction in the amount of $2,059.42, representing the City's share of certain reconstruction and repair work performed by the contractors. The city council declined to take further action in the matter.

It is insisted by appellants that the street improvement program was "initiated" by the resolution of March 15, 1950, and that the 1950 Act does not apply since it did not become effective until March 25, 1950. It is apparent that the council intended to follow the 1950 Act, and it is conceded, in effect, that if the Act does not apply

then the liens against the benefited property cannot be enforced.

We cannot agree that the program was initiated prior to the effective date of the 1950 Act. As we construe the resolution of March 15, the mayor's authority to contract with the engineer was conditional upon passage of the Act. The resolution was merely an expression of the council's intention to proceed under the Act if it became law. The mayor was authorized to employ an engineer only upon the contingency that the bill then pending in the legislature was passed and approved. It would be an extreme ruling to prohibit the City from proceeding under the 1950 Act merely because it had expressed its intention of so doing prior to passage of the Act. Of some significance is the fact the council's first action was recorded in a resolution rather than by ordinance. A resolution ordinarily is thought of as ministerial and temporary in character, whereas an ordinance prescribes a permanent rule of conduct and is the usual mode by which municipal legislative acts are adopted.

The law in effect prior to the 1950 Act provided that street improvement programs in cities of this class should be initiated by ordinance. KRS 94.600 (1948 edition). We also note that the 1950 Act contemplates that programs of this sort will be initiated by ordinance and not by resolution. In KRS 94.294(1) the phrase used is "original ordinance," and by KRS 94.292 the city legislative body is directed to proceed "by ordinance".

We conclude that the improvement program was initiated either by the resolution of April 10, 1950, or the ordinance of May 10, 1950, both of which were adopted after the effective date of the Act.

The argument that the apportionment and assessment were made without legal notice and opportunity to be heard is based upon the wording of the published notice that protest "may be submitted in writing." Appellants contend that the no-

tice by necessary implication prohibited oral protests before the council, whereas the statute provides that interested persons "may appear and be heard before the committee or board". KRS. 94.309(2). The appellees point out in response that the statute requires only that the notice state the time and place of inspection, and contend that the notice here complied with those requirements. Reliance also is placed on the fact no property owner who attempted to register an oral protest was denied a hearing. Our attention is called to the fact that two of the appellants representing a citizens' committee did in fact appear before the council and protest acceptance of the work. Moreover, it appears that on June 28, 1951, after an attempt had been made by the contractors to correct the defective items, another notice, admittedly in proper form, fixing another time and place for the hearing of protests was published in the Leitchfield Gazette. No one appeared in response to that notice.

We regard the steps taken by the council with reference to notice as a substantial compliance with the statute. The first notice fixed the time and place for filing protests. Although that notice should not have contained the reference to written protests, it is not shown that the council refused to hear oral protests. On the contrary, it appears, as already noted, that some such protests were heard; and, in an effort to correct any previous error, an additional notice ·was published after the last work was done. In such a situation we think KRS 94.314 is applicable. That section provides:

. "No error in the proceedings of the city legislative body shall exempt any property from the lien for the improvement tax, or the payment of the tax, after the work has been done and accepted. The city legislative body or the courts in which suits are pending shall make all corrections, rules and orders to do justice to all parties concerned."

See, Wait v. Southern Oil and Tar Co., 209 Ky. 682, 273 S.W. 473; City of Hartford v. King, Ky., 249 S.W.2d 13.

■ The contention that the assessment is not· enforceable because it was made before completion of the contract must also be rejected. The report of the City's engineer shows that the 'work was substantially complete at the time it was conditionally accepted by the city council. Although a number of defects remained to be corrected, it was the City's duty to act. Under the statute, 94.309(3), it had three alternatives': It could require the contractors to complete the work; it could apportion the cost to conform to the circumstances; or it could adopt a combination of the first two alternatives. It seems to us that the action decided upon · by the council not only conformed to the statute but adequately protected the rights of the interested parties. The conditional acceptance by the ordinance of January 15, 1951 became absolute upon the performance by the contractors of the conditions imposed in the· ordinance. The case of City of Earlington v. Powell, 226 Ky. 353, 10 S.W. 2d 1060, is very nearly in point. The City's action here closely parallels the course of action suggested by this Court in that case under a very similar statute.

The contractors rely on those cases decided under the statute in effect prior to 1950 in which it was said that in the absence of fraud, collusion or mistake the acceptance by the City is conclusive. O'Mara v. Town of Mt. Vernon, 299 Ky. 401, 185 S.W.2d 675; Town of Russell v. Whitt, 161 Ky. 187, 170 S.W. 609. The charges of fraud and collusion in this case ·are not sustained by the evidence.

■ The contractors also cite that line of cases of which Ormsby v. City of London, 220 Ky. 148, 294 S.W. 1025, is typical, which hold that a property owner cannot stand by and permit a contractor to improve the streets abutting his property under a contract with the City and then after the ·work ·has been accepted ·by the City

attack the proceedings under which the work was done for irregularities which do not render the proceedings void.

We consider the reasoning in the foregoing cases sound both in logic and in law, but we do not consider it necessary in this case to base our decision upon any legal presumption or arbitrary principle of law. We think that in this case there has been a substantial compliance with the applicable statutes, and that any deviation from literal compliance is cured by the saving provisions of KRS 94.314.

It is insisted with much vehemence that the streets were not properly constructed and that the property owners are not getting value in return for the money they are required to pay. The evidence on this point is conflicting. The chancellor found, in effect, that the streets were constructed in substantial compliance with the specifications. In fact, he stated in a written opinion "that in an effort to repair the resulting damage, the defendant contractors acted above and beyond the requirements of their contract." It is suggested by the chancellor that the dissatisfaction about the condition of the streets is due in part to the extremely severe weather of the winter of 1950–51. Cold weather set in shortly after the work on the streets was finished and before the water used in the asphalt emulsion had time to evaporate. Be that as it may, the evidence of improper construction and defects in the work is not sufficient to authorize us to upset the action of the City's engineer in recommending acceptance, the action of the city council in accepting the work, and the finding of the chancellor.

We have examined that part of the judgment which deals with the amount of recovery and computation of interest and are of the opinion the judgment is substantially correct but that it should be modified in the following respects:

The judgment authorizes the recovery of certain interest against "the plaintiffs in this action who obtained the issuance of said temporary injunction and upon the bond ex-

ecuted in connection therewith." The sureties on the injunction bond referred to are not parties here and no recovery should have been directed against them.

The judgment also should be reduced in the amount of $626.06. It appears that the City's engineer contemplated that the contractors would furnish additional crushed limestone to cover this amount but the stone has not been furnished and the City is entitled to credit against the contractors in that amount.

The errors which we have found in the judgment are not of sufficient importance when considered in relation to the total amount involved ($72,606.10) to require a reversal, but the judgment should be modified to the extent we have indicated.

In all other respects the judgment is affirmed.